IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DALMAC-SHELTON FANNIN FARMS, LTD., *et al.*, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:08-CV-0782-N |
| ZURICH AMERICAN INSURANCE CO., | § § § | |
| Defendant. | § | |

## ORDER

This Order addresses Plaintiff Dalmac-Shelton Fannin Farms, Ltd.'s motion for partial summary judgment [7], Plaintiffs Dalmac-Shelton Investments, Inc., LIC Ventures, Inc. and Ralph Shelton's motion for partial summary judgment [21], and Defendant Zurich American Insurance Company's ("Zurich") motion for summary judgment [30]. Because the underlying lawsuit alleges an occurrence and none of the exclusions raised by Zurich applies, the Court grants Plaintiffs' (collectively, "Dalmac") motions and denies Zurich's motion.

### I. BACKGROUND

#### *A. The Underlying Lawsuit*

This is an insurance coverage dispute. Dalmac is a defendant in *City of Arlington v. Citgo Pipeline Products, et al.*, Cause No. 048-208043-04, in the 48th Judicial District Court in Tarrant County, Texas (the "Underlying Lawsuit"). According to the allegations in the Underlying Lawsuit, Dalmac bought land within the City of Arlington from nonparty Oliver Fannin in order to develop a residential subdivision. Dalmac retained Goodwin & Marshall

as its engineers and to assist in dealing with Arlington on the project. As part of the development, Dalmac agreed to dedicate land for an extension of an existing road, sold approximately 16 acres to Arlington for a park, and agreed with Citgo to move an existing pipeline. Apparently due to errors by Goodwin & Marshall, the pipeline was moved into the path of the road and through part of the park. Arlington then sued the various parties involved, including Dalmac.

Zurich issued Dalmac a commercial general liability insurance policy (the "Policy") applicable during the pertinent period.[1] Dalmac tendered defense of the Underlying Lawsuit to Zurich. Zurich declined to defend, and this action followed.

### *B. Coverage Basics*

Under Texas law,[2] courts generally determine whether a lawsuit triggers an insurer's duty to defend only by comparing the factual allegations in the underlying complaint to the language of the insurance policy. *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596 (5th Cir. 2006) (applying Texas law); *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Known as the "eight corners rule" or the "complaint-allegation rule," this method requires the Court to compare only the "four corners" of the underlying complaint with the "four corners" of the policy. *GuideOne*, 197 S.W.3d at 308.

---

[1] Zurich at one time argued that the original plaintiff was not an insured under the Policy. Additional related plaintiffs joined this action, and Zurich no longer raises any issue regarding insured status.

[2] This case is before the Court on the basis of diversity jurisdiction, and the parties agree that Texas law applies. The Court will therefore apply Texas law.

ORDER – PAGE 2

"Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination [of whether the duty to defend is implicated] and allegations against the insured are liberally construed in favor of coverage." *Id.* Furthermore, the Court must focus on the facts alleged in the underlying complaint, not the legal theories asserted. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005) (applying Texas law). The insurer's duty to defend thus depends on whether the factual allegations in the underlying complaint, without regard to their veracity, would potentially state a claim that falls within the policy's coverage. *Liberty Mut.*, 473 F.3d at 600; *GuideOne*, 197 S.W.3d at 310.

"[W]hen an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern. . . . Exceptions or limitations on an insurer's liability are considered even more stringent[ly]." *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000) (citations and internal quotation omitted). "Where an ambiguity involves an exclusionary provision of an insurance policy, [courts] 'must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties intent.'" *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 741 (Tex. 1998) (quoting *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991)).

### C. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is a genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute over a material fact is genuine if, based on the evidence, a reasonable jury could return a verdict for either party. *Id.* at 252. In ruling on a motion for summary judgment, the Court must accept the nonmoving party's evidence and draw all justifiable inferences in its favor. *Id.* at 255.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The moving party may meet this burden by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324.

## II. THE UNDERLYING LAWSUIT ALLEGES AN OCCURRENCE

Zurich first argues that the Underlying Lawsuit does not seek recovery for damages caused by an occurrence. The insuring agreement in the Policy provides that Zurich "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. . . . This insurance applies to . . .

'property damage' only if: (1) The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory . . . .'" Appendix in Support of Defendant's Motion for Summary Judgment and Brief in Support 25 [hereinafter cited as Zurich App.]. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 38.

This case lies in the interstices between two Texas Supreme Court cases. In *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex. 1973), the underlying lawsuit alleged that the insured wrongly excavated "borrow" material from the plaintiffs' property, pursuant to an agreement with a tenant on the property who was not authorized to approve the excavation. The property owners sued for trespass. The court held that was not an accident because the insureds "did exactly what they intended to do. The fact that they did not deal originally with the owners of the property was the mistake or error." *Id.* at 635.

In *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007), the court held that a general contractor's allegedly defective construction or faulty workmanship in constructing a house foundation was an occurrence because the underlying lawsuit alleged that the defective construction was a product of negligence. *Id.* at 9. The court distinguished *Maupin*:

> We have further said that an intentional tort is not an accident and thus not an occurrence regardless of whether the effect was unintended or unexpected. [*Maupin*, 500 S.W.2d at 635.] But a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly.

242 S.W.3d at 8 (citations omitted).  The court discussed, with apparent approval, a Fifth Circuit case:

> Applying our prior decisions, the Fifth Circuit has concluded that the terms "accident" and "occurrence" include damage that is the "unexpected, unforeseen or undesigned happening or consequence" of an insured's negligent behavior, including "claims for damage caused by an insured's defective performance or faulty workmanship."  *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 725 (5th Cir. 1999).

242 S.W.3d at 9.  The court concluded on this point:

> The determination of whether an insured's faulty workmanship was intended or accidental is dependent on the facts and circumstances of the particular case.  For purposes of the duty to defend, those facts and circumstances must generally be gleaned from the plaintiffs' complaint.  *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) (applying eight corners or complaint allegation rule).  Here, the complaint alleges an "occurrence" because it asserts that Lamar's defective construction was a product of its negligence.

242 S.W.3d at 9.

Zurich argues that Dalmac intended to move the pipeline, and moved it where Dalmac intended to move it.  While that may be true,[3] Dalmac's determination of where to move the pipeline, according to the Underlying Lawsuit, was a result of negligence.  *See* Plaintiff's Fifth Amended Original Petition ¶ 13.2 [hereinafter 5th Petition], Zurich App. 101.  The damage incurred by Arlington was thus the unexpected, unforeseen and undesigned happening or consequence of Dalmac's negligent behavior.  *See Federated Mut.*, 197 F.3d at 725.  The complaint alleges an "occurrence" because it asserts that Dalmac's improper

---

[3]Dalmac argues that the second proposition is not alleged in the Underlying Lawsuit.  Even if it were, that does not alter the Court's analysis.

ORDER – PAGE 6

relocation of the pipeline was a product of its negligence. *See Lamar Homes*, 242 S.W.3d at 9.

This result is consistent with the analysis of the Western District of Texas in *Admiral Ins. Co. v. Little Big Inch Pipeline Co.*, 523 F. Supp. 2d 524 (W.D. Tex. 2007). There the owner of a trailer park contracted with a gas services company to turn off the gas in the trailer park, which the owner was converting to a residential subdivision. The contractor engaged a subcontractor to excavate and remove the gas lines. The subcontractor, in the course of removal, cut through various concrete work intended for the new subdivision and otherwise caused damage to the new project. The property owner sued the contractor and subcontractor for the damage in the underlying lawsuit. The carrier sought declaratory judgment that it had no duty to defend or indemnify.

The *Little Big Inch* court determined that *Maupin* and *Lamar Homes* represented two distinct lines of authority. *Id.* at 531-35. The court determined "the dispositive issue in the instant case is whether the Underlying Defendants acted negligently or committed an intentional tort." *Id.* at 535. The court held "that the Underlying Petition adequately alleges facts that demonstrate a claim of negligence in the Underlying Suit." *Id.* at 536. The court thus held that an accident occurred and there was coverage. *Id.* Likewise here, the pleading in the Underlying Lawsuit adequately alleges facts that demonstrate a claim of negligence, and thus an accident and an occurrence.

## III. THE EXCLUSIONS DO NOT APPLY

### *A. Expected or Intended Damage Exclusion*

The Policy excludes coverage for "'property damage' expected or intended from the standpoint of the insured." Zurich App. 26. This is essentially a replay of the occurrence discussion. Plaintiff's Fifth Amended Original Petition in the Underlying Lawsuit alleges both intentional and negligent acts by Dalmac. The inclusion of uncovered claims does not negate the duty to defend:

> The duty to defend is not negated by the inclusion of claims that are not covered; rather, it is triggered by the inclusion of claims that might be covered. . . . Over-inclusive allegations do not negate the duty to defend; the duty applies if there is a possibility that *any* of the claims might be covered.

*Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 495-96 (Tex. 2008) (emphasis in original).

The pleading in the Underlying Lawsuit alleges:

> [Dalmac's] conduct that caused damage to Arlington's property was the result of the unexpected consequences of relying on the pipeline easement layout and survey prepared by Goodwin & Marshall. [Dalmac was] negligent in moving the pipeline onto Arlington's property and placing [it] at the location prepared by Goodwin & Marshall, and in relying on Goodwin & Marshall's representation that Arlington had approved the relocation of the pipeline to its present location.

5th Petition ¶ 13.2, Zurich App. 101. This alleges damage that was unexpected and negligent, rather than damage that was expected or intentional from the standpoint of Dalmac. This claim thus falls outside the scope of the expected or intentional act exclusion.

### B. Alienated Premises Exclusion

The Policy excludes coverage for property damage to "Premises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises." Zurich App. 23. Zurich focuses on the "sell, give away or abandon" language and argues that the exclusion applies here because the damage Arlington alleges in its petition was to the park, land that Dalmac sold to Arlington, or the road right of way, land that Dalmac dedicated, or gave away, to Arlington. Dalmac, in contrast, focuses on the "arises out of any part of those premises" language and argues that the exclusion applies only when the damage to the premises arose from the premises, e.g., when the property was contaminated. *See Stull v. Am. States Ins. Co.*, 963 F. Supp. 492, 493 (D. Md. 1997) (exclusion applied where insured sold gas station and grocery store and was sued when buyer discovered contamination of underground water by gasoline).

Dalmac's construction is at least reasonable. Accordingly, the Court must adopt it. *See Balandran, supra.* This is consistent with construing exclusions narrowly. *See Swift Energy, supra*.

### C. Operations Exclusion

The Policy also excludes coverage for property damage to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing if [sic] operations, if the 'property damage' arises out of those operations." Zurich App. 23. Dalmac argues, first, that the exclusion is ambiguous due to the extraneous "if" and, second, that it does not apply. The Court holds that the

typographical error does not make the exclusion ambiguous, but that it does not apply to some of the allegations fairly within the scope of the Petition.

***1. The Effect of the Typographical Error.*** – Under Texas law, a "typographical mistake *must* yield to the well-established doctrine that written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document and to this end, *words, names, and phrases obviously intended may be supplied.*" *City of Galveston v. Galveston Mun. Police Ass'n*, 57 S.W.2d 532, 539 (quoting *Ussery Invs. v. Canon & Carpenter, Inc.*, 663 S.W.2d 591, 593 (Tex. App. – Houston [1st Dist.] 1983, writ dism'd)) (emphasis added by *City of Galveston* court). *Accord Steadfast Ins. Co. v. SMX 98, Inc.*, 2008 WL 62199, at *10 (S.D. Tex. 2008) (applying this principle to construction of insurance contract). The same principle would seem to require with equal force the deletion of surplus verbiage obviously intended not to be supplied.

"The CGL policy is a standard form developed by the Insurance Services Office, Inc. ('ISO') and is used throughout the United States." *Lamar Homes, supra*, 242 S.W.3d at 5. In footnote, the *Lamar Homes* court explained: "The ISO is the industry organization responsible for drafting the industry-wide standard forms used by insurers." *Id.* n.1. With the exception of the extraneous "if," exclusion j(5) is identical to the ISO standard form j(5) exclusion commonly found in CGL policies.[4] Indeed, this language is in a manuscript

---

[4]Representative cases quoting the standard form language include: *Mid-Continent Cas. Co. v. JHP Devel., Inc.*, 557 F.3d 207, text accompanying note 1 (5th Cir. 2009) (Texas law); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 11 (Tex. 2007); *Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 670 n.21 (Tex. App. – Houston [14th Dist.] 2006, pet. denied); *CU Lloyd's of Texas v. Main Street Homes, Inc.*, 79 S.W.3d 687, 696

endorsement that alters the standard exclusion j(5), which is found later in the Policy. *See* Zurich App. 28. This suggests the extraneous "if" is a typographical error and should be ignored. At minimum, the typographical error construction is a reasonable construction of the exclusion.

If there were another reasonable construction of the Policy provision that did not involve reading the "if" out of the language, the Court would perhaps be obligated to adopt that construction. Dalmac argues that "if operations" "could be construed to reference property damage arising out of 'conditional operations,' referring to operations to be undertaken by a subcontractor only after a designated condition has occurred." Dalmac Brief in Response to Zurich Motion for Summary Judgment 31. There is nothing in the record to suggest that any such conditional operations were involved or were contemplated by the parties. Reading the exclusion and the Policy as a whole, the Court holds that construing "if operations" to mean some kind of conditional operation is an unreasonable construction. Accordingly, the Court adopts the typographical error construction as the only reasonable construction and will read the exclusion omitting the extraneous "if."

---

(Tex. App. – Austin 2002, no pet.); *Mid-Continent Cas. Co. v. Camaley Energy Co.*, 364 F. Supp. 2d 600, 606 (N.D. Tex. 2005) (Texas law). *Accord Advantage Homebuilding, LLC, v. Maryland Cas. Co.*, 470 F.3d 1003, 1009 (10th Cir. 2006); *Clear, LLC v. Am. & Foreign Ins. Co.*, 2008 WL 818978, at *3 (D. Alaska 2008); *Schmitt v. NIC Ins. Co.*, 2007 WL 3232445, at *2 n.8 (N.D. Cal. 2007); *American Contractors Ins. Co. v. United Nat'l Ins. Co.*, 2006 WL 2366433, at *1 (E.D. Ken. 2006); *Amin Realty, L.L.C. v. Travelers Prop. Cas. Co.*, 2006 WL 1720401, at *1 (E.D.N.Y. 2006); *Tolomeo v. Emanuelson*, 2005 WL 1629900, at *3 (E.D. Wis. 2005); *Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517, 527-28 (D. Del. 2001); *Oscar W. Larson Co. v. United Capitol Ins. Co.*, 845 F. Supp. 451, 455 (W.D. Mich. 1993); *Nat'l Union Fire Ins. Co. v. Structural Sys. Tech., Inc.*, 756 F. Supp. 1232, 1240 (E.D. Mo. 1991).

*2. The Operations Exclusion Does Not Apply to All Claims in the Underlying Lawsuit.* – Zurich argues this exclusion as if the 5th Petition alleges that Dalmac and its contractors and subcontractors did the work of moving the pipeline into Arlington's park and right of way. While there is some language to that effect, there is other language that indicates that Dalmac merely entered into an agreement with Citgo to grant a new easement and reimburse Citgo for Citgo's expenses incurred in moving the pipeline into the new easement, and that it was Citgo and Citgo's contractors who actually moved the pipeline. To the extent the 5th Petition alleges that theory, the damage would have been caused by Citgo's operations, not Dalmac's operations, and the exclusion would not apply.

> The 5th Petition provides in part:
>
> Dalmac-Shelton entered into a [sic] Amendment to Right of Way Agreement with CITGO Pipeline Products Company without Arlington's knowledge, consent or permission, and Dalmac-Shelton's president Ralph Shelton negligently and improperly granted a new easement for CITGO's pipeline. The agreement moved part of the pipeline from a development owned by Dalmac-Shelton, on which it wished to plat residential home sites, onto Arlington's parkland. Dalmac-Shelton and CITGO agreed to place the new easement in the parkland at the location proposed by Goodwin & Marshall.

5th Petition ¶ 8.4, Zurich App. 88

> Knowing that the pipeline was going to be installed by CITGO, and that it would conflict with extension of Bowen Road, and that it was being implemented without Arlington having signed the Amendment to Right-of-Way Agreement, Goodwin & Marshall employees and principals decided not to tell Mr. Shelton or Arlington of the problem.

5th Petition ¶ 8.9, Zurich App. 89.

> On March 20, 2003, Dalmac-Shelton paid CITGO $60,345.56 more, for a grand total of $346,471.07, for anticipated reimbursement costs for the relocation of the pipeline. On March 28, 2003 a fully executed

ORDER – PAGE 12

> Reimbursement Agreement was exchanged between CITGO and Dalmac-Shelton. CITGO informed its staff that "we are ready to do this work."

5th Petition ¶ 9.1, Zurich App. 91.

> Dalmac-Shelton and CITGO, or their agents or subcontractors acting under their direction, entered Arlington's property without its knowledge, consent, or permission, cleared approximately 1.22 acres of the Post Oak Woodland trees (a survey estimates the number at 1,834 trees and 5,566.50 caliper inches of trees), and laid a new pipeline.

5th Petition ¶ 9.3, Zurich App. 92.

> Dalmac-Shelton's and CITGO's conduct that caused damage to Arlington's property was the result of the unexpected consequences of relying on the pipeline easement layout and survey prepared by Goodwin & Marshall. CITGO and Dalmac-Shelton were negligent in moving the pipeline onto Arlington's property and placing at the location prepared by Goodwin & Marshall, and in relying on Goodwin & Marshall's representation that Arlington had approved the relocation of the pipeline to its present location.

5th Petition ¶ 13.2, Zurich App. 101.

True enough, the 5th Petition includes allegations that Dalmac itself (presumably acting through contractors) moved the pipeline. To the extent the 5th Petition makes that claim, it would be excluded from coverage by the operations exclusion. The 5th Petition though also alleges another theory of recovery against Dalmac: in negligent reliance on Goodwin & Marshall, Dalmac conveyed a new easement to Citgo that traversed Arlington's park and right of way and agreed to reimburse Citgo for its expenses in moving the pipeline, and Citgo then, through its contractors and subcontractors, actually did the work of moving the pipeline. Under this second theory, there is nothing in the 5th Petition that suggests Citgo was acting as Dalmac's contractor or subcontractor, and it is therefore outside the scope of

ORDER – PAGE 13

the operations exclusion. *See Zurich v. Nokia*, *supra*. The operations exclusion thus does not negate Zurich's duty to defend or indemnify.

### D. Professional Liability Exclusion

The Policy contains a professional liability exclusion:

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
    a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
    b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.
2. Subject to Paragraph 3. below, professional services include:
    a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
    b. Supervisory or inspection activities performed as a part of any related architectural or engineering activities.
3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

Zurich App. 50.

Zurich argues the applicability of only Paragraph 1.b. *See* Defendant Zurich American Insurance Company's Brief in Support of Response to Plaintiffs' Motion for Partial Summary Judgment 18 [docket 25]; Defendant Zurich American Insurance

ORDER – PAGE 14

Company's Brief in Support of Motion for Summary Judgment 18-20 [docket 31].[5] That paragraph is limited to services "in connection with construction work you perform." As discussed in the operations exclusion above, the 5th Petition also includes a claim that Citgo moved the pipeline, and Dalmac simply granted it an easement and reimbursed Citgo's expenses. That claim falls outside Paragraph 1.b because it is not "in connection with construction work [Dalmac] perform[ed]."

Secondly, the exclusion has a limited definition of professional services in Paragraph 2. The 5th Petition asserts many acts of alleged negligence by Goodwin & Marshall that fall outside the limited definition of Paragraph 2. See 5th Petition ¶ 6.12, Zurich App. 85 (failure to conform work with Development Review Committee comments); *id.* ¶ 7.3, Zurich App. 87 (failure to submit plans for pipeline relocation); *id.* ¶¶ 8.6-8.9, Zurich App. 88-89 (after Goodwin & Marshall learned of its error, but before pipeline was moved, it failed to advise Dalmac or Arlington of problem). Those claims fall outside the definition of professional services in the exclusion. Accordingly, the Court holds that the professional services exclusion does not preclude coverage for all of the claims in the 5th Petition.

---

[5]Curiously, Zurich does not raise any professional services exclusion in response to the original motion for partial summary judgment filed by Dalmac-Shelton Fannin Farms Ltd. *See* Defendant Zurich American Insurance Company's Brief in Response to Plaintiff's Motion for Summary Judgment [docket 15]. The Court assumes that Zurich intends its later filed arguments regarding the professional services exclusion also to apply to that motion and treats them as having been made with respect to all three motions.

## CONCLUSION

Dalmac need show only one claim in the 5th Petition that is within the scope of the insuring agreement and that Zurich cannot show was excluded in order to establish its entitlement to a defense. The Court holds that Dalmac has shown the 5th Petition alleges an occurrence and that Zurich cannot show that all of the claims against Dalmac are precluded by one or more exclusions. The Court therefore grants Dalmac's motion for partial summary judgment that Zurich owed Dalmac a duty to defend, and denies Zurich's motion for summary judgment.

Signed March 30, 2009.

_____
David C. Godbey
United States District Judge